IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | NO. 8:23-CR-86 |
| vs. | |
| ERIC CHA, | **ORDER ON MOTION FOR REVOCATION OF RELEASE** |
| Defendant. | |

Defendant Eric Cha has been indicted on three counts: conspiracy to distribute and possess with intent to distribute marijuana; money laundering; and conspiracy to commit money laundering. Filing 375 (Third Superseding Indictment). On May 16, 2025, United States Magistrate Judge Brianna Fuller Mircheff in the Central District of California granted the defendant release with several conditions. Filing 436-1. On May 23, 2025, the Court stayed that Order on the Government's Motion, Filing 436, and required the defendant to file any response to the Government's Motion no later than May 27, 2025, at 12:00 p.m. CDT. Filing 438. The defendant filed a timely response and requested a hearing on this matter. Filing 444. For the reasons stated below, the defendant's request for a hearing is denied, the Government's Motion is granted, the magistrate judge's release order is revoked.

1

## I.   BACKGROUND

On March 18, 2025, a Grand Jury in the District of Nebraska returned a three-count Third Superseding Indictment against several defendants, including Eric Cha. Filing 375.[1] The defendant was on May 13, 2025, in California, and he appeared three days later before Magistrate Judge Mircheff in the Central District of California. Filing 436-1. Pretrial Services recommended detention, citing "the defendant's ties to a foreign country, valid passport, history of international travel, and discrepancies in the financial information initially reported by the defendant." Filing 436-2 at 4. Over the Government's objection and request that the defendant remain detained pending trial, the magistrate judge ordered the defendant's release subject to certain conditions. Filing 436-1. On May 23, 2025, the Government moved for an emergency stay of the magistrate judge's decision to release the defendant on bond pending trial. Filing 436. This Court granted the Government's Motion for a stay to allow the Court to conduct a *de novo* review of the magistrate judge's release decision. Filing 438.

## II.   LEGAL ANALYSIS

### A. Applicable Standards

Review of a release order is authorized by 18 U.S.C § 3145(a), which provides that such motions "shall be determined promptly." The parties agree that "the Court has discretion to conduct a de novo review of Judge Mircheff's order under 18 U.S.C. § 3145(a)(1)." Filing 444 at

---

[1] Count I of the Third Superseding Indictment alleges that the defendant and others conspired to distribute and possess with intent to distribute 1000 kilograms or more of a mixture and substance containing a detectable amount of marijuana and a mixture, compound, and preparation containing THC. Filing 375 at 1. Count II of the Third Superseding Indictment alleges that the defendant and others engaged in money laundering to conceal and disguise the nature, location, and source of unlawful activity. Filing 375 at 2. Count III of the Third Superseding Indictment alleges that the defendant and others conspired to launder money. Filing 375 at 2–3. There is also a Forfeiture Allegation identifying numerous assets. Filing 375 at 3–7.

7; *see also United States v. Cook*, 87 F.4th 920, 921 (8th Cir. 2023). Release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Upon a judicial determination "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." *Id.* § 3142(e)(1). As the Government does not contend that the defendant is a threat to the safety of any other person or the community, the Court's analysis will focus on risk of flight. In addition, the statute lists several factors to consider when granting or denying release. *Id.* § 3142(g). Moreover, a rebuttable presumption of detention applies where "there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" 18 U.S.C. § 3142(e)(3).

## B. Request for Hearing

As other courts have aptly noted, "there is no statutory requirement that the court hold a hearing" under 18 U.S.C § 3145, and the Court "retains the discretion to decide whether to hold a hearing." *United States v. Martin*, 447 F.Supp.3d 399, 402–03 (D. Md. 2020) (quoting *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019)). Because the Court can determine this matter based on the record before it, there is no need to hold a hearing. Accordingly, the defendant's request for a hearing, Filing 444 at 19, n.19, is denied.

### C. Release Is Inappropriate Because the Applicable Factors Heavily Favor Detention

Upon *de novo* review, having reviewed the same record that was before Magistrate Judge Mircheff and being otherwise intimately familiar with this case,[2] the Court concludes that although the defendant has overcome the statutory presumption of detention, detention is nevertheless warranted.

The presumption of detention is implicated in this case because the Court has probable cause to believe the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 3142(e)(3). The defendant was indicted under 841(b)(1)(A)(vii), which provides for up to life imprisonment for possessing with intent to distribute over 1,000 kilograms of marijuana. Here, the defendant's "indictment is prima facie evidence of the existence of probable cause." *Looney v. Romero*, 2 F.2d 22, 23 (8th Cir. 1924); *see also United States v. Bravo*, No. 13-138 2013 WL 3984608 (D. Neb. Aug. 2, 2013) (noting that "the majority of Circuit Courts of Appeal agree that an indictment provides probable cause of the presumption in favor of detention"); *United States v. Stenger*, 536 F. Supp. 2d 1022, 1025 (S.D. Iowa 2008) ("Probable cause to believe that the Defendant committed the alleged [offense] is provided by the Grand Jury's indictment in this case"); *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) ("Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act"). Thus, the statutory presumption of detention applies.

---

[2] The Court has written several orders in this case, including an Order on a Motion for Revocation of a Release Order filed by the Government against a codefendant. *United States v. Marshall*, No. 8:23-CR-86, 2024 WL 578753 (D. Neb. Jan. 30, 2024), *reconsideration denied*, No. 8:23-CR-86, 2025 WL 343502 (D. Neb. Jan. 30, 2025); *see also United States v. Marshall*, No. 8:23-CR-86, 2024 WL 3555302 (D. Neb. July 26, 2024) (Order denying codefendant's Motion to Dismiss).

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose [ ] a risk of flight." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Here, the defendant has likely met the "limited burden of production" as it relates to his "risk of flight." *Id.* The defendant notes that he has lived in the United States for the past 40 years and that his family lives "within thirty minutes from his home." Filing 444 at 2. Although the defendant is a dual citizen of the United States and Taiwan, the defendant reports he cannot speak fluent Mandarin, the native language of Taiwan. Filing 444 at 2. In addition, the defendant avers he returned to this country from Taiwan—which as the Government points out, "does not have an extradition agreement with the United States," Filing 436 at 7—"despite his knowledge of the indictments." Filing 444 at 5. Finally, the defendant "is willing to restrain" his approximately ten million dollars' worth of assets" in the form of bond conditions [ ] to meet an amount that would satisfy the Court's concern about risk of flight. Filing 444 at 9.[3] The Court agrees that these considerations make it less likely that the defendant "pose[s] a risk of flight." *Abad*, 350 F.3d at 797. Thus, the defendant has met his "limited burden of production," so statutory presumption of detention is not determinative on its own. *Id.*

But even where a defendant meets his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Abad*, 350 F.3d at 797. These other factors include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

---

[3] The parties quibble over whether the defendant accurately disclosed the extent of his assets during his pretrial services interview. *Compare* Filing 436 at 5, *with* Filing 444 at 9. Although the Court briefly addresses this issue below, a full discussion of this disagreement is unnecessary because the Court would revoke the defendant's release order regardless.

>terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including—
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings ; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g).[4]

Weighing the statutory presumption of detention alongside the remaining pertinent factors under 18 U.S.C. § 3142(g) demonstrates that detention is warranted.

The "nature and circumstances of the offense charged" in this case weighs in favor of detention. 18 U.S.C. § 3142(g)(1). The offense "involves . . . a controlled substance." *Id.* Indeed, the Government charges that the defendant conspired to distribute over 1,000 kilograms of a controlled substance. Filing 375 at 1. Moreover, the criminal activity in this case is highly complex and lucrative, as the defendants are alleged to have laundered and conspired to launder considerable monetary proceeds from the drug conspiracy. The United States contends its investigation revealed that "CHA had given cooperating defendant(s) approximately $50,000,000

---

[4] The Court omits extended discussion of "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release" because the Government bases its Motion for Revocation of Release on risk of flight. 18 U.S.C. § 3142(g)(4). Even so, the Eighth Circuit has acknowledged "the congressional determination that large scale drug trafficking is a serious danger to the community." *United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991).

in marijuana proceeds to be shipped from cities east of Mississippi to Los Angeles California." Filing 436 at 5.

The nature and circumstances of the offense charged also favors detention because the charged offenses provide an obvious incentive for the defendant to flee. In *Cook*, the Eighth Circuit Court of Appeals noted that the defendant's "serious risk of flight and nonappearance [was] obvious" where the defendant faced "a potentially lengthy prison sentence if convicted" and had "not served a prison term before." *Cook*, 87 F.4th at 925; *see also United States v. Stenger*, 536 F. Supp. 2d 1022, 1026 (S.D. Iowa 2008) ("The potential penalty the Defendant faces if he is convicted in this case leads the Court to believe there is some incentive for him to attempt to flee"). These same considerations apply here. If convicted on Count I, the defendant—who apparently has only ever received sentences of probation for misdemeanor convictions, Filing 436-2 at 11–12—potentially faces a statutorily-imposed mandatory minimum term of incarceration of no less than 10 years and a possible sentence up to life. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii); 21 U.S.C. § 846. Counts II and III carry potentially lengthy terms of incarceration as well. *See* 18 U.S.C. § 1956(a)(1) (providing for a sentence of up to 20 years' imprisonment in addition to financial penalties). The seriousness of the charged crimes increases the flight risk and favors detaining the defendant.

The "weight of the evidence against the" defendant also favors detention. 18 U.S.C. § 3142(g)(2). As the defendant acknowledges, "There is no dispute that a court at a detention hearing is not bound by the Rules of Evidence and may allow both parties to proceed by way of evidentiary proffer." Filing 444 at 7; *see also United States v. Kent*, 496 F.Supp.3d 500, 504–05 (D.D.C. 2020) ("Examining the weight of the evidence as to guilt does not run afoul of due process."). The Government proffers that it has significant evidence, including evidence derived from "a separate

cooperating witness," tying the defendant to drug distribution and money laundering operations. Filing 436 at 5–8. The Government also avers that it has in its possession a "PowerPoint found on Cha's hard drive indicating he was in the marijuana business with codefendant Leidermann," the lead codefendant in this case. Filing 436 at 7. Nowhere in his brief does the defendant contest the strength of the Government's case. *See generally* Filing 444. The weight of the evidence against the defendant makes flight more likely and therefore heavily favors detention.

Finally, the defendant's "history and characteristics" favor detention. 18 U.S.C. § 3142(g)(3). The defendant has had "extensive travel," including travel to Taiwan in "9 of the last 10 years" as well as "Mexico and central America." Filing 436 at 5. On at least one occasion, the defendant flew with Starlux, a premium Taiwanese airline. Filing 436 at 8. The United States contends that Starlux allowed the defendant to board a flight with a U.S. passport that expired days later, despite general airline policies requiring passport validity requirements of three to six months. The United States insinuates that the defendant could utilize this carrier to fly out of Mexico or Canada, potentially without proper documentation. Filing 436 at 8. This weighs in favor of the defendant being a risk to flee. Also, as discussed above, Taiwan does not have an extradition treaty with the United States. Filing 444 at 5. Although the defendant points out that Taiwan occasionally extradites a charged defendant to the United States without an extradition treaty, the lack of an extradition treaty with a country the defendant frequently travels to and has citizenship in increases the risk of flight. In addition, the defendant has considerable financial resources he could utilize to flee. The defendant himself states that the value of his assets "total approximately $10,000,000." Filing 444 at 9. The combination of financial resources and foreign connections is potent, and the other considerations are relatively unweighty.

The Court also has concerns regarding the defendant's honesty with the Government regarding his assets. The defendant argues at length that he was more forthcoming regarding his assets with the investigator, HIS Special Agent Craig Allrich, prior to his Pretrial Services interview, even though Pretrial Services concluded the defendant was not fully transparent regarding his assets. Filing 436-2 at 4. The Court has carefully reviewed the parties' proffers and concludes that the defendant was not fully transparent about his assets. This causes the Court further concern regarding the defendant's risk of flight.

The defendant's criminal history and attendance at judicial proceedings do not dispose of the Court's concerns as to the defendant's risk of flight. As previously discussed, the defendant's lack of significant criminal history and prison experience incentivize flight in the face of a potential lengthy prison sentence. The defendant's lack of a record regarding failure to appear at court proceedings is also not particularly probative given the defendant's limited criminal history. And while the Court does not dismiss the importance of the defendant's family and community ties, these considerations "do not tip the scales when weighed against the government's damning evidence." *Abad*, 350 F.3d at 799. Accordingly, the defendant's wealth and foreign connections favor detaining the defendant as a significant flight risk.

The defendant further repeatedly argues that his retention of counsel in 2023 to defend himself against a potential indictment shows he intends to defend himself rather than flee. Filing 444 at 3, 5. The Court is not convinced. The defendant admits he has approximately $10 million in assets, Filing 444 at 9, despite the Government suggesting the defendant's annual salary being approximately $120,000, Filing 436 at 5–6. The United States, among other things, also alleges that "a separate cooperating witness reported that CHA laundered roughly $310,000 in cash to purchase a high-end watch and artwork for his personal benefit." Filing 436 at 5. Retaining counsel

9

in this situation does not necessarily indicate the defendant's intention to not flee; it could also reflect the defendant's effort to protect his apparent vast wealth which the United States contends was at least in part accumulated by conduct giving rise to the defendant's indictment in this case.

After considering all the factors under 18 U.S.C. § 3142(g), the Court concludes that the defendant is a flight risk. The defendant faces serious charges supported by weighty evidence, which provides sufficient motivation for flight. The defendant also has the capability to flee due to his significant foreign connections and vast financial resources. The defendant is a citizen of a country that does not have an extradition treaty with the United States and has traveled there nearly yearly for the past 10 years. The fact that the defendant is being charged with an offense that carries a statutory presumption of detention reinforces the Court's conclusion that "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e). Under these circumstances, after conducting a *de novo* review of the record before the magistrate judge, the Court "shall order the detention of the person before trial." *Id.*

### III.    CONCLUSION

The defendant is a significant flight risk due to his foreign connections and wealth. The only way to reasonably assure the defendant's appearance at future proceedings is to order his detention. Accordingly,

IT IS ORDERED:

1. The defendant's request for hearing, Filing 444, is denied;
2. The Government's Motion for Revocation of a Release Order, Filing 436, is granted;
3. The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate,

to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

4. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel; and

5. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshall for the purpose of an appearance in connection with a court proceeding.

Dated this 28th day of May, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge