IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:23CR86 |
| | ) | |
| Plaintiff, | ) | |
| | ) | PETITION OF GERALD CASALE FOR |
| vs. | ) | HEARING AND DETERMINATION THAT |
| | ) | PETITIONER'S INTEREST IN |
| DAVID LEIDERMANN, ET AL, | ) | PROPERTY SHOULD NOT BE |
| | ) | FORFEITED, PURSUANT TO 21 USC § |
| Defendants. | ) | 853(n) |
| _____ | ) | |
| | ) | |
| GERALD CASALE, | ) | |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | |

COMES NOW Petitioner Gerald Casale, by and through his undersigned attorney, and provides

this Petition for an Ancillary Hearing pursuant to 21 U.S.C. §853(n), and requests a hearing and a

determination that his interest in four properties should not be forfeited.

<u>PETITION</u>

I, Gerald Casale, hereby petition this Court for a hearing and determination that my interest in the

following properties should not be forfeited, pursuant to 21 U.S.C. §853(n).

a.  Real property located at Napa County, California, Parcel # 052-472-021, 51 Syar Drive, Napa, California.

b.  Real property located at Los Angeles County, California, Parcel # 5021-006-023, 816 Seward Street, Los Angeles, California.

c.  U.S. funds in the amount of $459,314.59 seized August 31, 2023, from City National Bank account 101388425 owned by Gerald V. Casale, Trustee of the Gerald V. Casale Trust.

d.  U.S. funds in the amount of $121,071.62 seized August 31, 2023, from City National Bank account 112559124 belonging to More Gold Records, owned by Gerald V. Casale.

In support of this petition, I assert the following:

1.     I am a musician, vocalist and songwriter who co-founded a band called DEVO in the 1970's; we had a top 20 hit in 1980 along with several other hits and albums.  I also am a successful music video and TV commercial director.  My income for the past 50+ years has been primarily from the music business, i.e., music sales, music publishing and live music concerts, particularly from DEVO-related projects.

2.     In 1979, my band and I hired Neal Levin and Associates as our business manager; all the members of DEVO signed a power of attorney allowing our manager to handle our finances. Lisa Ferguson worked with Neal Levin and ran the company when Levin retired. Ferguson renamed the company Premier Business Management Group, which later merged with Provident Financial Management inn 2017. According to the Provident company website, Ferguson formed her firm in 2003 and has been a Business Manager for over 37 years.

3.     Provident's website states that its business managers typically work with a broad range of clients, including multi-platinum musical groups, songwriters, producers, traveling tours, movie and television actors, writers and high net-worth individuals and executives.

4.     All of the money I earned was managed by Ferguson, a Certified Public Accountant and currently one of the managing directors of Provident.

5.     I provided Provident and Lisa Ferguson with a personal power of attorney to conduct and manage all of my personal and business financial endeavors. These services included but were not limited to opening and closing bank accounts, setting up business entities, filing annual personal and business tax returns, maintaining books and records for each entity, and on a daily and weekly basis making deposits and paying expenses from all of my bank accounts.

6.     I developed a high level of trust and confidence with Provident and Ferguson and the

services they provided over the 40 plus years we have worked together. Although I maintained telephone and email communication with Provident, it was not possible as a businessman and performer for me to be involved in the day-to-day management of my personal and business finances. I believed Provident was effectively managing my business and personal finances as necessary and would contact me only when necessary.

7.     In about 1995 I was introduced to James Rega and David Max Leidermann, two young musicians/writers at the time.  I invited the two to audition for a music-based CD Rom game *DEVO Presents Adventures of the Smart Patrol,* for which they played character roles. The CD Rom game was released in 1996 by Inscape, a video game company.

8.     In 2002 I purchased the property at 816 Seward Street with a $140,000 down payment from my own money I had earned in my music and personal business.  None of this down payment came from funds from Rega, Leidermann or any of the other defendants in this case. The property contains a music studio and an apartment.  The studio was rented to Dustin Cohen/ Kik Wear Industries beginning July 2003 for $13,000 per month ($156,000 per year), until about June 2006.

9.     I called the music production studio "More Gold Records."  More Gold Records is a sole proprietorship owned by me and was created so that the studio could be rented by musicians for their own personal artistic pursuits. I opened More Gold Records bank account number *9124 at City National Bank for the purpose of maintaining that property, including collecting rent and, paying the building's mortgage and expenses.

10.     Sometime after Dustin Cohen left, Rega and Leidermann began renting the building at 816 Seward Street to use for music recording and production services.  In 2017 we entered into a 10-year lease agreement for them to continue using the building. The rental amount was $161,644.20 per year ($13,470 per month). They also lived in the building studio's apartment.

11.    I also introduced Rega and Leidermann to Provident, who had been handling the rental income and expenses for the property. Provident would collect the rent from them and ensure that the mortgage payments and building expenses were paid on a timely basis. I assumed that Provident was handling the management of the property properly. As was my custom, I trusted them to honestly and faithfully handle my finances and felt no need to second guess their business practices.

12.    In or about 2011, Rega and I agreed to form Camera Ready Architecture LLC to pursue the rental of locations for music videos, along with architecture and restoration pursuits. Provident also handled the management and finances related to that business. This business continued for several years until, in April 2023, Rega and Leidermann were indicted.

13.    After the indictment, I learned for the first time that Provident apparently had accepted cash payments from Rega and Leidermann for the rent and building expenses, and may have co-mingled my legitimate money with the funds received from them. Provident never informed me of this. I was never personally contacted by my bank or Provident regarding any alleged suspicious cash transactions and was never aware of any illegal activity conducted by Rega or Leidermann.

14.    I also have since learned that Provident apparently followed the directions of Rega and Leidermann and did not consult or confirm those instructions with me, which I assume was because Provident had my power of attorney and were trusted by me to provide their services properly. Nevertheless, I used my own financial resources to pay for my personal and business expenses.

15.    I also have since learned that some of the deposits into my personal trust account *8425 came from reimbursements by Rega and Leidermann for expenses advanced and paid by Provident from my account(s) to cover Rega's and Leidermann's expenses. These apparently included auto expenses for the use of my vehicles, personal expenses (utilities and loans), music and film editing projects, lease expenses for the use of a New York apartment owned by me, and real estate expenses for property

improvements and restoration for other properties owned by me under Camera Ready Architecture, LLC.

16.      However, I understand that an analysis by my accountant determined that these reimbursements almost exactly equal the expenses Provident advanced from my accounts, i.e., all funds deposited into my accounts were legitimate rental and expense payments and/or reimbursements for the funds Provident disbursed from my accounts.  It appears that Provident also may have been taking its 5% commission not only on my music income, but also on the rent and other reimbursements paid by Rega and Leidermann.

17.      Nevertheless, I believe all of the funds seized from my trust account were my own personal income/funds. This included a $152,000 deposit made into my trust account in 2019 from an inheritance after my mother passed away and $1.3 million from the sale of some music publishing to Primary Wave in 2020.

18.      I lived modestly over the past four decades.  I resided in the same house since 1985, drove a compact car I had since 2007 and sold in 2015.  I have owned and driven my current car since 2018.

19.      The subject real property at 51 Syar Drive, Napa, California is my family home, in which I reside with my wife and three-year-old daughter, who is in school there.

20.      Our home on 51 Syar Drive is a single-family residence, which we purchased for $1.1 million through the Gerald V. Casale Trust on September 13, 2019.  A down payment for the property in the amount of $320,000 from my personal income was paid to the buyer on September 12, 2019 using funds from my Trust account.  The remaining amount of the purchase price was paid with a mortgage loan in my name.

21.      The Syar Drive property was purchased as my family's personal residence. I had sufficient legitimate income for the purchase and maintenance of this property, which did not use any funds

provided by any of the defendants.

22.    Since the purchase date, Provident used my personal funds from the Trust account to make the mortgage payments and pay expenses associated with the property. The mortgage and expenses were not paid with funds provided by any of the defendants; all came from my personal income. Since the seizure of my personal bank account, I have continued to pay the mortgage and expenses for this property from my personal,, legitimate income.

23.    I have learned that Provident deposited funds into my Trust account *8425 from other sources, without my knowledge, approval or consent.  However, as stated above, I have been informed that any funds that may have been provided to Provident for me by Rega and/or Leidermann were for the sole purpose of reimbursement of expenses paid for or advanced by me for legitimate purposes.

24.    I also understand that the funds remaining in the Trust and More Gold bank accounts at the time the government seized them are traceable to my own personal funds.

25.    In addition, the down payments I made for the purchase of both the Seward Street and Syar Drive properties came from my legitimate income, as were the mortgage payments and other expenses incurred to maintain the properties. I have continued to pay these costs even since the bank accounts were seized and this case was filed by the government.

26.    Based on the above, I believe I have a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in me rather than any of the defendants, and was superior to any right, title, or interest of any of the defendants at the time of the commission of the acts which may give rise to the forfeiture of the property under this section.

27.    The above properties do not constitute and are not derived from any proceeds obtained, directly or indirectly, as the result of any of the defendants' offenses. I believe they also are not property

used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses. In addition, the above properties were not involved in such offenses and are not traceable to properties involved in such offenses.

28.     In addition, I believe I am a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

29.     My wife, daughter and I also maintain a possessory interest in the Syar Drive family hom and have maintained this interest since the time I purchased the home in September 2019.

30.     To summarize, I retained Provident to manage my finances, including conducting my bar transactions. Provident deposited funds into my Trust bank account that were earned or owed to me fro my music and other legitimate business projects, and used these funds to pay my personal and business expenses. I trusted Provident to handle my money honestly, and assumed it had done so. I never knew o or authorized Provident to commingle my money with any money obtained by anyone illegally, and had known it was doing that, I would have terminated its services immediately. I trusted Provident to handle my money properly.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 6th, 2026.

_Gerald Casale_
GERALD CASALE

Dated: January 26, 2026             Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation

*/s/ Eric Honig*

_____

ERIC HONIG – CA Bar. No. 140765
Attorney for Petitioner Gerald Casale
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
(Tel) 310-699-8051
(Fax) 310-943-2220

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on January 26, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the Parties of record.


/s/  *Eric Honig*

_____

ERIC HONIG